IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,364

In the Matter of KAREN A. EAGER,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed November 26, 2014. Indefinite suspension.

*Kate F. Baird*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Karen A. Eager*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Karen A. Eager, of Lawrence, an attorney admitted to the practice of law in Kansas in 1997.

On December 6, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed a motion for additional time to file an answer to the formal complaint on December 17, 2013; the hearing panel granted the motion. The respondent filed an answer on January 6, 2014, and a proposed plan of probation on January 13, 2014. An amended formal complaint was filed on January 29, 2014.

A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on January 29, 2014; the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated

1

KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.15(b) (2013 Kan. Ct. R. Annot. 553) (safekeeping property); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); 5.5(a) (2013 Kan. Ct. R. Annot. 630) (unauthorized practice of law); 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice); 8.4(g) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct adversely reflecting on lawyer's fitness to practice law); and Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) (notification of clients upon suspension).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"11.    In 2006, the respondent went to work for the Dis[ability] Rights Center, Topeka, Kansas. The respondent remained in that position until her termination on approximately January 21, 2013.

"12.    On September 14, 2012, the Kansas Supreme Court issued an order suspending the respondent's license to practice law for her failure to comply with the annual continuing legal education requirements. Ms. Eager's license to practice law remains suspended.

"DA11268

"13.    On April 27, 2007, M.G. had surgery on his shoulder. During the surgery, a pain pump was inserted. Following the surgery, M.G. suffered pain which he believed was caused by the surgery and the insertion of the pain pump. M.G. sought to

2

retain counsel to file a medical malpractice or product liability case. A number of attorneys declined to represent M.G. Eventually, M.G. contacted the respondent. At the time M.G. contacted the respondent, she was employed by the Disability Rights Center. M.G.'s case was not one that the Disability Rights Center was permitted to accept.

"14.     The respondent felt regret for M.G.'s situation and agreed to help him find an attorney. The respondent was unable to locate an attorney willing to take his case. The respondent agreed to file a petition on behalf of M.G. in order to preserve the statute of limitations.

"15.     On April 27, 2009, the respondent filed suit on behalf of M.G. in federal court against the pump manufacturer, the physician, and the hospital.

"16.     While the respondent did not intend to represent M.G. in the litigation and she informed M.G. that she was merely filing the suit to preserve his statute of limitations, she never withdrew from the representation.

"17.     Thereafter, the defendants filed motions to dismiss. The respondent failed to respond to the motions to dismiss. On September 9, 2009, the court issued an order to show cause why the case should not be dismissed. The respondent did not respond to the court's order. The court dismissed the case and assessed costs to M.G.

"18.     The respondent failed to properly communicate with M.G. regarding the representation. The respondent failed to inform M.G. that the motions to dismiss were filed. The respondent failed to inform M.G. that the court dismissed the case.

"19.     On December 21, 2010, M.G. filed a complaint with the disciplinary administrator's office. Following the investigation of the disciplinary complaint, on July 17, 2012, the respondent entered into an attorney diversion agreement. In the agreement, the respondent stipulated to the underlying facts which gave rise to the rule violations in M.G.'s case.

3

"20.     The respondent failed to successfully complete the diversion and the diversion was revoked.

"DA11682

"21.     J.K. is deaf. While a student in a Master's program at the University of Kansas, in the archaeology department, J.K. experienced difficulties in communicating with his professors. As a result of his difficulties, J.K. contacted the Disability Rights Center for assistance. On October 19, 2010, J.K. met with the respondent.

"22.     Thereafter, J.K. met with the respondent on numerous occasions. On February 4, 2011, J.K. met with the respondent and J.K. signed a formal grievance letter. The respondent also signed the grievance letter. The respondent agreed to file the grievance with the University of Kansas. Despite her agreement to do so, the respondent failed to forward the fully executed grievance letter.

"23.     J.K. contacted the respondent on many occasions, requesting that the respondent provide him with a copy of the signed grievance. Additionally, J.K. sought information about the current status of the grievance. The respondent failed to provide J.K. with a copy of the signed grievance. Further, the respondent failed to provide J.K. with the requested information.

"24.     The respondent agreed to meet with J.K. on July 11, 2011, at Starbucks in Lawrence, Kansas. Traveling from his home in Kansas City, Missouri for the meeting, J.K. appeared, but the respondent did not. The respondent did not let J.K. know that she was not available to keep the appointment.

"25.     J.K. rescheduled the meeting for approximately 1 week later. The respondent and J.K. met, however, the respondent failed to provide a satisfactory explanation as to the status of J.K.'s grievance. During this meeting, the respondent 'berated' J.K.

4

"26.    Thereafter, from time to time, J.K. wrote to the respondent and her supervisor requesting an update regarding the status of the grievance. The respondent never provided J.K. with a copy of the signed grievance letter nor did she adequately answer J.K.'s inquiries.

"DA11797

"27.    On March 25, 2013, Lane Williams, Deputy Director of the Disability Rights Center filed a complaint with the disciplinary administrator's office detailing problems he discovered after he terminated the respondent's employment.

"Representation of N.R.

"28.    The respondent settled a personal injury case in 2008, on behalf of N.R., a client of the Disability Rights Center. At the time of the settlement in 2008, the respondent retained $5,500 from the settlement proceeds to satisfy Medicaid and Medicare liens. The respondent failed to diligently negotiate the liens. At the time of the respondent's termination of employment in 2013, the funds were still being held on behalf of N.R.

"Representation of P.J.

"29.    On September 29, 2007, P.J. died. The respondent agreed to represent the estate of P.J. in a wrongful death action against Residential Living Center. On September 29, 2009, the respondent filed the wrongful death action. The respondent, however, failed to obtain service on the defendant.

"30.    Thereafter, Residential Living Center filed a motion to dismiss. On March 25, 2010, the court granted the motion dismiss for failure to obtain timely service of process.

5

"<u>Representation of R.E.</u>

"31.    R.E. believed that his 12-year-old daughter was improperly expelled from a day care because of her developmental disabilities. Because the day care received federal subsidies, the respondent believed that a discrimination claim was viable.

"32.    In May, 2012, the respondent agreed to file a claim on behalf of R.E.'s 12-year-old daughter. However, the respondent never filed the petition.

"33.    Prior to the suspension of the respondent's license, the respondent prepared the petition. However, once the respondent's license had been suspended, the respondent did not file the petition. Thereafter, respondent failed to take steps necessary to protect R.E. and his daughter's claim.

"<u>Representation of J.S.</u>

"34.    While transporting J.S., a developmentally disabled man, the driver employed by Community Living Opportunities, ran a red light and caused an automobile accident. As a result of the accident, J.S. was paralyzed. Community Living Opportunities carried an insurance policy with $1,000,000 limit.

"35.    On May 9, 2009, the respondent agreed to file suit on behalf of J.S. The respondent filed suit and obtained service on Community Living Opportunities. Thereafter, the respondent took no action to prosecute the case.

"36.    On October 8, 2009, the court dismissed the action for lack of prosecution.

"37.    On April 8, 2010, the respondent refiled the suit. On July 23, 2012, the court again dismissed the action for lack of prosecution. On October 3, 2012, J.S. died.

6

"38.     In defending the disciplinary complaint, the respondent asserted that she would have been able to obtain a minimum of $250,000 but that because J.S. died without heirs, no injury resulted from the dismissal of the case.

"Representation of D.D.

"39.     The respondent agreed to assist D.D. with satisfying court obligations so that a warrant for D.D.'s arrest would be lifted. D.D. agreed to provide monthly payments and reports. For a period of time, D.D. sent monthly payments and reports and the respondent forwarded the monthly payments and reports to the court.

"40.     Subsequently, D.D. sent payments in the form of money orders without the report. Rather than forward the payment to the court, the respondent retained the payments waiting for a report from D.D. The respondent later learned that D.D. had become homeless.

"41.     At the time of the respondent's termination of employment with the Disability Rights Center, there were three money orders from 2008 and 2009 in her desk.

"Unauthorized Practice of Law

"42.     After the Kansas Supreme Court suspended the respondent's license to practice law, on September 14, 2012, the respondent failed to notify her clients, opposing counsel, and the courts as required by Kan. Sup. Ct. R. 218.

"43.     Further, after her license was suspended, the respondent continued to practice law until the termination of her employment with the Disability Rights Center, on approximately January 21, 2013.

"*Conclusions of Law*

"44.     Pursuant to the terms of the diversion agreement and in the respondent's answer, the respondent admitted that she violated KRPC 1.3, KRPC 1.4, KRPC 8.4(d),

7

and Kan. Sup. Ct. R. 208 in DA11268. During the course of the hearing on the formal complaint, the respondent admitted that she violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 5.5, KRPC 8.4(g), Kan. Sup. Ct. R. 208 and Kan. Sup. Ct. R. 211 in DA11682 and KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.4(d), Kan. Sup. Ct. R. 208, and Kan. Sup. Ct. R. 218 in DA11797.

"45.     Based upon the stipulations made by the respondent and the findings of fact above, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 5.5, KRPC 8.4(d), KRPC 8.4(g), and Kan. Sup. Ct. R. 218, as detailed below. The hearing panel concludes that clear and convincing evidence was not presented to establish that the respondent violated KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 208.

## "KRPC 1.1

"46.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to employ the requisite thoroughness and preparation reasonably necessary for the representation of J.K. in DA11628 and N.R., the estate of P.J., R.E., and J.S., in DA11797. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

## "KRPC 1.3

"47.     Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent M.G. in DA11268, J.K. in DA11628, and N.R., the estate of P.J., R.E., J.S., and D.D. in DA11797. The respondent repeatedly failed to take proper action regarding the representation of these clients. Finally, the respondent's lack of diligence caused serious injury. M.G. lost his cause of action. A grievance was never filed on behalf of J.K. N.R.'s funds languished at the Disability Rights Center. The estate of P.J. lost its cause of action. Suit was never filed on behalf of R.E.'s 12 year-old daughter. J.S.'s cause of action was dismissed and J.S. died without the benefit of settlement

8

proceeds. The victim of D.D.'s criminal action did not receive restitution payments which D.D. had forwarded to the respondent. As a result of the respondent repeatedly failing to act with reasonable diligence and promptness in representing her clients, the hearing panel concludes that, on numerous occasions, the respondent violated KRPC 1.3.

"KRPC 1.4

"48.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when she failed to provide adequate communication to M.G. in DA11268, to J.K. in DA11628, and to the estate of P.J. and R.E. in DA11797. Accordingly, the hearing panel concludes that the respondent repeatedly violated KRPC 1.4(a).

"KRPC 1.15

"49.    Lawyers must deal properly with the property of their clients. Specifically, KRPC 1.15(b) provides:

> '(b)    Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

The respondent violated KRPC 1.15(b) when she failed to distribute the $5,500 held for N.R. Additionally, the respondent violated KRPC 1.15(b) when she failed to forward the money orders to the court for payment of restitution on behalf of D.D. Accordingly, the hearing panel concludes that the respondent twice violated KRPC 1.15(b).

9

"KRPC 1.16

"50.     KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

> 'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

Prior to the respondent's suspension, she prepared a petition to be filed on behalf of R.E.'s daughter. However, once the respondent's license to practice was suspended, the respondent took no additional action to protect R.E. and his daughter's rights. Under KRPC 1.16(d), the respondent had a duty to protect R.E. and his daughter's claim by taking certain steps. The respondent failed to do so. As a result, the hearing panel concludes, that the respondent violated KRPC 1.16(d).

"KRPC 3.2

"51.     An attorney violates KRPC 3.2 if she fails to make reasonable efforts to expedite litigation consistent with the interests of her client. After filing a wrongful death case for P.J.'s estate and the personal injury suit for J.S., the respondent took no further action to prosecute the cases. Failing to take action after the litigation was filed amounts to a violation of KRPC 3.2. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2 in two cases.

10

"KRPC 5.5

"52.     KRPC 5.5(a) prohibits the unauthorized practice of law. After the Kansas Supreme Court suspended the respondent's license to practice law, the respondent continued to practice law until her employment with the Disability Rights Center was terminated. As such, the hearing panel concludes that the respondent engaged in an ongoing violation of KRPC 5.5(a) from September 14, 2012, through approximately January 21, 2013.

"KRPC 8.4(d)

"53.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that is prejudicial to the administration of justice on many occasions.

a.     When the respondent failed to respond to the order to show cause in M.G.'s case, the respondent engaged in conduct that was prejudicial to the administration of justice.

b.     The respondent also engaged in conduct that was prejudicial to the administration of justice when she filed the wrongful death action on behalf of the estate of P.J. and then took no additional action.

c.     Additionally, the respondent engaged in conduct that was prejudicial to the administration of justice when she filed the personal injury litigation on behalf of J.S. and then took no action to prosecute the case.

d.     Finally, the respondent engaged in conduct that was prejudicial to the administration of justice when she failed to forward the restitution payments from D.D. to the district court on three occasions.

"54.     As such, the hearing panel concludes that the respondent violated KRPC 8.4(d) in four cases.

11

## "KRPC 8.4(g)

"55. 'It is professional misconduct for a lawyer to . . . engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.' KRPC 8.4(g). The respondent engaged in conduct that adversely reflects on her fitness to practice law when she failed to provide J.K. with a copy of the signed grievance, when she failed to forward the grievance to the University of Kansas, when she failed to appear at the scheduled appointment on July 11, 2011, and when she berated J.K. during their late July 2011, meeting. The hearing panel concludes that the respondent violated KRPC 8.4(g).

## "Kan. Sup. Ct. R. 218

"56. After an attorney's license is suspended, the respondent must comply with Kan. Sup. Ct. R. 218. Kan. Sup. Ct. R. 218 requires a suspended attorney to notify clients, opposing counsel, and the courts of the suspension. Following the respondent's suspension in 2012, the respondent failed to notify her clients, opposing counsel, and the courts of her suspension. Thus, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 218.

## "*American Bar Association*
## *Standards for Imposing Lawyer Sanctions*

"57. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"58. *Duty Violated*. The respondent violated her duty to her clients to provide competent and diligent representation. The respondent violated her duty to her clients to provide adequate communication. The respondent violated her duty to the legal

12

profession to refrain from engaging in conduct that is prejudicial to the administration of justice. Finally, the respondent violated her duty to the legal system to comply with court orders and rules and timely prosecute litigation.

"59.     *Mental State*.  The respondent knowingly violated her duties.

"60.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual and serious injury to her clients. The respondent does not appear to fully appreciate the serious injury that she caused to her vulnerable clients. M.G.'s cause of action was dismissed because of the respondent's misconduct. J.K.'s grievance was never filed with the University of Kansas as a direct result of the respondent's misconduct. Because of the respondent's misconduct, $5,500 sat in trust for N.R. for 5 years. The estate of P.J. lost its wrongful death cause of action because of the respondent's misconduct. R.E.'s discrimination claim on behalf of his daughter was lost because of the respondent's failures. J.S., a developmentally disabled individual, lost his cause of action when liability was clearly established and when there was a $1,000,000 policy limit. The respondent seems to argue that her misconduct in the J.S. case is mitigated by the fact that J.S. died and left no heirs. What the respondent fails to recognize is that had the respondent provide diligent representation to J.S., he could have used the settlement proceeds to increase the quality of the last portion of his life. Finally, the victim of D.D.'s criminal action did not receive the restitution payments made by D.D. because the respondent failed to forward the payments to the district court.

"61.     The serious injury caused by the respondent's misconduct is significant to each of these individuals.

"Aggravating and Mitigating Factors

"62.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

13

"63. *Prior Disciplinary Offenses*. The respondent has been previously disciplined on one occasion. For the respondent's misconduct regarding M.G., the respondent participated in the attorney diversion program. Pursuant to Kan. Sup. Ct. R. 203(d), unsuccessful participation in the attorney diversion program constitutes previous discipline.

"64. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. The respondent failed to provide competent and diligent representation to many clients. Further, the respondent failed to provide adequate communication to a number of clients.

"65. *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 5.5, KRPC 8.4(d), KRPC 8.4(g), and Kan. Sup. Ct. R. 218.

"66. *Refusal to Acknowledge Wrongful Nature of Conduct*. In the respondent's initial response to the complaints and in the respondent's answer, other than the admissions required by the attorney diversion agreement, the respondent refused to acknowledge that her conduct amounted to rule violations. During the hearing, she begrudgingly acknowledged that her conduct rose to the level of rule violations.

"67. *Vulnerability of Victim*. The respondent's clients were all particularly vulnerable to the respondent's misconduct. Each of the respondents came to the Disability Rights Center because they have a disability. Each of the respondents relied on the respondent to protect their legal rights.

"68. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1997. At the time of the misconduct, the respondent has been practicing law for many years.

"69. *Indifference to Making Restitution*. Clearly, the respondent is indifferent to making restitution to her injured clients. The record is void of any reference by the respondent to making or attempting to make restitution to any of her clients.

14

"70.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"71.    *Absence of a Dishonest or Selfish Motive*.  The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"72.    *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*.  The respondent suffers from many health problems including ovarian cysts, Hashimoto's thyroiditis, Lyme's disease, Rocky Mountain Spotted Fever, restless leg syndrome, and depression. Additionally, the respondent had a 'breast cancer scare.' It is clear that the respondent's health problems contributed to her misconduct.

"73.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*.  Kathleen Ambrosio, Kip Elliott, and Lane Williams testified about the respondent's previous good character and reputation.

"74.    *Physical Disability*.  The physical ailments which the respondent has endured amount to a physical disability which mitigates the respondent's misconduct.

"75.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12    Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42    Suspension is generally appropriate when:

15

(a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.22   Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.'

"*Recommendation*

"76.    The disciplinary administrator recommended that the respondent be suspended for a period of 1 year. Further, the disciplinary administrator recommended that prior to reinstatement, the respondent undergo a hearing pursuant to Kan. Sup. Ct. R. 219. The respondent recommended that her plan of probation be adopted. The respondent further recommended that if the hearing panel was not satisfied with the proposed plan of probation, that the hearing panel could craft a plan that will allow the respondent to continue to practice law.

"77.    Kan. Sup. Ct. R. 211(g)(3) dictates when a hearing panel may recommend that a respondent be placed on probation.

'The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)     the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least

16

fourteen days prior to the hearing on the Formal Complaint;

(ii)      the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)     the misconduct can be corrected by probation; and

(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"78.     First, in this case, the respondent is not eligible for placement on probation because the respondent's license is not in good standing. The respondent's license is currently suspended for failure to comply with continuing legal education obligations. For a period of approximately 18 months, the respondent has taken no action to rectify the administrative problems with her license. The fact that the respondent failed to take action to have the administrative suspension lifted reflects directly on the respondent's ability to succeed on probation. In the hearing panel's opinion, a recommendation of probation is not appropriate to make regarding a suspended attorney.

"79.     Additionally, pursuant to Kan. Sup. Ct. R. 211(g), probation is not appropriate in this case. The proposed plan is not workable, substantial, and detailed as required by the rule. Currently, the respondent does not have an attorney selected to supervise the probation. Further, the respondent failed to put the proposed plan of probation into effect prior to the hearing on the formal complaint. Finally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"80.     From a review of the evidence, it is clear that a period of suspension is warranted and necessary. The respondent needs time to manage her physical issues. Further, the respondent needs sufficient time to reflect on the injury that she caused to her clients. Finally, the respondent needs time to develop a plan that will succeed in preventing a recurrence of the misconduct, in the event the respondent is permitted to resume the practice of law.

"81.     Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be indefinitely suspended. Because the respondent continued to practice after her license was suspended, it is not appropriate to recommend that the suspension be made retroactive to the date of the administrative suspension. However, the uncontradicted testimony is that the respondent did not practice law following her termination of employment with the Disability Rights Center. From the evidence presented, it appears that the respondent's employment with the Disability Right Center was terminated approximately January 21, 2013. Accordingly, the hearing panel recommends that the suspension be made retroactive to January 21, 2013.

"82.     Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline that should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

18

Respondent was given adequate notice of the formal complaint, to which she filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing report. The panel's findings of fact are therefore deemed admitted. Supreme Court Rule 212(c) and (d) (2013 Kan. Ct. R. Annot. 375).

The evidence before the hearing panel establishes by clear and convincing evidence that the charged misconduct violated KRPC 1.1 (2013 Kan. Ct. R. Annot. 446) (competence); 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.15(b) (2013 Kan. Ct. R. Annot. 553) (safekeeping property); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); 5.5(a) (2013 Kan. Ct. R. Annot. 630) (unauthorized practice of law); 8.4(d) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct prejudicial to the administration of justice); 8.4(g) (2013 Kan. Ct. R. Annot. 655) (engaging in conduct adversely reflecting on lawyer's fitness to practice law); and Kansas Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) (notification of clients upon suspension), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

At the hearing before this court, at which the respondent appeared, Deputy Disciplinary Administrator Kate F. Baird recommended that the respondent be suspended for a period of 1 year and that she be required to undergo a Rule 219 reinstatement hearing. Baird further recommended that any future reinstatement of respondent be conditioned upon her submission to physical and mental health assessments and a demonstration that respondent fully participated in any treatment recommended as a result of those assessments. Baird also suggested that respondent should be required to

demonstrate compliance with requirements for continuing legal education before any reinstatement.

Counsel for the respondent represented to this court at oral argument that his client agreed with the discipline recommendation advocated by the Disciplinary Administrator's office. However, the respondent stated during her presentation to the court that, in view of the fact that she had not practiced law in almost 2 years, she sought discipline of published censure. Respondent also said she had completed all required CLE for 2013 but had not attempted to comply with her CLE requirement for 2014. In response to a question from the court, respondent admitted she also had not attempted to take financial responsibility for any monetary losses of clients harmed by her ethical violations.

In rebuttal, Baird referred the court to Paragraph 80 of the panel's final report, in which the panel members observed that respondent needed time to reflect on the harm she had caused her clients. Baird suggested that respondent's comments regarding her clients during the hearing before this court did not demonstrate that respondent had developed an appreciation for that harm.

We agree. As a result, we believe it necessary to suspend respondent indefinitely from the practice of law. If she seeks reinstatement in the future, she will be required to produce reasonably contemporaneous reports from physical and mental health professionals describing her compliance with any treatment recommendations and supporting her petition for reinstatement. Further, respondent's reinstatement panel should investigate and develop recommendations for the court on whether any period of respondent's future law practice should be supervised. In addition, in order to achieve any future reinstatement, the respondent must be in compliance with CLE requirements. The majority of the court rules that respondent's period of indefinite suspension shall be retroactive to January 21, 2013, the approximate date of respondent's termination by the

Disability Rights Center; a minority of the court would not make the period of indefinite suspension retroactive.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Karen A. Eager be indefinitely suspended from the practice of law in Kansas, retroactive to January 21, 2013. See Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and, in the event of her filing of a petition for reinstatement, shall be subject to a reinstatement hearing under Rule 219 (2013 Kan. Ct. R. Annot. 407).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BILES, J., not participating.
JAMES T. PRINGLE, JR., District Judge, assigned.[1]
MICHAEL J. MALONE, Senior Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** District Judge Pringle, Jr. was appointed to hear case No. 111,364 vice Justice Biles pursuant to the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.

[2]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 111,364 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.